## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JON BARRETT, Individually and on )
Behalf of All Others Similarly Situated, )  Case No. _____
)
Plaintiff, )
)
v. )  **COMPLAINT – CLASS ACTION FOR**
)  **VIOLATIONS OF SECTIONS 14(a)**
)  **AND 20(a) OF THE SECURITIES**
ENVISION HEALTHCARE )  **EXCHANGE ACT OF 1934**
CORPORATION, WILLIAM A. )
SANGER, CAROL J. BURT, )
LEONARD M. RIGGS, MICHAEL L. )  **JURY TRIAL DEMANDED**
SMITH, CHRISTOPHER A. )
HOLDEN, JAMES A. DEAL, JOHN )
T. GAWALUCK, STEVEN I. )
GERINGER, JAMES D. SHELTON, )
and JOEY A. JACOBS, )
)
Defendants. )
)

Plaintiff Jon Barrett ("Plaintiff"), by and through his undersigned counsel, alleges upon

personal knowledge with respect to himself, and upon information and belief based upon, *inter*

*alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and all other

similarly situated public shareholders of Envision Healthcare Corporation ("Envision" or the

"Company") against Envision and the members of the Company's board of directors (collectively,

the "Board" or "Individual Defendants," and, together with Envision, the "Defendants") for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Securities and Exchange Commission ("SEC") Rule

14a-9, 17 C.F.R. § 240.14a-9, and Regulation M-A, 17 C.F.R. § 229.1015(b)(4) ("Item 1015"), in

connection with the proposed acquisition (the "Proposed Transaction") of Envision by Kohlberg Kravis Roberts & Co. L.P. ("KKR") and its affiliates.[1]

2.      On June 10, 2018, the Board caused the Company to enter into an Agreement and Plan of Merger ("Merger Agreement") with Parent and Merger Sub, pursuant to which each common share of Envision will be converted into the right to receive $46.00 in cash (the "Merger Consideration").

3.      On July 9, 2018, in order to convince Envision's shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading proxy statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Envision; (ii) the valuation analyses performed by Envision's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan"), Evercore Group L.L.C. ("Evercore"), and Guggenheim Securities, LLC ("Guggenheim," and together with J.P. Morgan and Evercore, the "Financial Advisors"), in support of their respective fairness opinions; and (iii) the potential conflict of interests Evercore faced as a result of its historical dealings with Envision and KKR.

5.      The special meeting of Envision shareholders to vote on the Proposed Transaction is scheduled for September 11, 2018 (the "Shareholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed to the Company's

---

[1]    Enterprise Parent Holdings Inc. ("Parent") and Enterprise Merger Sub Inc. ("Merger Sub"), an indirect wholly owned subsidiary of Parent, are affiliates of investment funds affiliated with KKR and were formed solely for the purpose of entering into the Merger Agreement and consummating the Proposed Transaction.

shareholders prior to the Shareholder Vote so that they can properly exercise their corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the Shareholder Vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Envision's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, a shareholder of Envision common stock.

8.      Defendant Envision is a Delaware corporation, with its principal executive offices are located at 1A Burton Hills Boulevard, Nashville, Tennessee 37215.  Envision is a leading provider of physician-led services, post-acute care, and ambulatory surgery services.  Envision common stock trades on the NYSE under the ticker symbol "EVHC."

9.      Defendant William A. Sanger is, and has been at all relevant times, a director of Envision, and currently serves as Chairman of the Board.

10.     Defendant Carol J. Burt is, and has been at all relevant times, a director of Envision.

11.     Defendant Leonard M. Riggs is, and has been at all relevant times, a director of Envision.

12.     Defendant Michael L. Smith is, and has been at all relevant times, a director of Envision.

13.     Defendant Christopher A. Holden is, and has been at all relevant times, a director of Envision.

14.     Defendant James A. Deal is, and has been at all relevant times, a director of Envision.

15.     Defendant John T. Gawaluck is, and has been at all relevant times, a director of Envision.

16.     Defendant Steven I. Geringer is, and has been at all relevant times, a director of Envision.

17.     Defendant James D. Shelton is, and has been at all relevant times, a director of Envision

18.     Defendant Joey A. Jacobs is, and has been at all relevant times, a director of Envision

19.     The parties in paragraphs 9 through 18 are referred to herein as the "Individual Defendants" and/or the "Board," collectively with Envision the "Defendants."

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

21.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District under 28 U.S.C. § 1391, because Envision is incorporated in this District, some of the transaction and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District, and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public common shareholders of Envision (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24.     This action is properly maintainable as a class action because:

a) the Class is so numerous that joinder of all members is impracticable.  As of August 2, 2018, there were approximately 121.39 million common shares of Envision outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of Envision will be ascertained through discovery;

b) there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.     whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

ii.   whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.   whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c)   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d)   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e)   the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f)   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g)   a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.   Background of the Company and the Proposed Transaction

25.   Envision is a leading provider of physician-led services, post-acute care, and ambulatory surgery services.  As of March 31, 2018, Envision delivered physician services, including in the areas of emergency department and hospitalist services, anesthesiology services, radiology/tele-radiology services, and children's services to more than 1,800 clinical departments in healthcare facilities in 45 states and the District of Columbia.  Post-acute care is delivered through an array of clinical professionals and integrated technologies which, the Company believes when combined, contribute to efficient and effective population health management strategies. Envision owns and operates 261 surgery centers and one surgical hospital in 35 states and the District of Columbia, with medical specialties ranging from gastroenterology to ophthalmology and orthopedics.

26.   KKR is a leading global investment firm that manages multiple alternative asset classes, including private equity, growth equity, energy, infrastructure, real estate, and credit, with strategic manager partnerships that manage hedge funds.  KKR aims to generate attractive investment returns for its fund investors by following a patient and disciplined investment approach, employing world-class people, and driving growth and value creation with KKR portfolio companies.  KKR invests its own capital alongside the capital it manages for fund investors and provides financing solutions and investment opportunities through its capital markets business.

27.   Parent is a Delaware corporation, an affiliate of investment funds affiliated with KKR, and was formed solely for the purpose of entering into the Merger Agreement and consummating the Proposed Transaction.

28.     Merger Sub is a Delaware corporation, an indirect wholly owned subsidiary of Parent that will function as the merger subsidiary in the merger, and is an affiliate of investment funds affiliated with KKR.  Merger Sub was formed solely for the purpose of entering into the Merger Agreement and consummating the Proposed Transaction.

29.     On June 11, 2018, Envision issued a press release announcing the Proposed Transaction.  The press released, stated in relevant part:

### Envision Healthcare to be Acquired by KKR for $46.00 Per Share in All-Cash Transaction

*Sale Follows Comprehensive Review of Strategic Alternatives*

*32% Premium to VWAP from Announcement of Review of Strategic Alternatives*

*Represents Enterprise Value of $9.9 Billion*

NASHVILLE, TN – June 11, 2018 – Envision Healthcare Corporation ("Envision" or the "Company") (NYSE: EVHC) today announced it has entered into a definitive agreement to be acquired by global investment firm KKR in an all-cash transaction for approximately $9.9 billion, including the assumption or repayment of debt. Under the terms of the agreement, which has been unanimously approved by Envision's Board of Directors (the "Board"), KKR will acquire all of the outstanding shares of Envision's common stock for $46.00 per share in cash, representing a 32% premium to Envision's volume-weighted average share price (VWAP) from November 1, 2017, the day immediately following the Company's first announcement that it was reviewing strategic alternatives. The transaction price represents a multiple of 10.9x trailing 12 months Adjusted EBITDA and 10.1x 2018 anticipated Adjusted EBITDA.

The agreement represents the culmination of the Board's comprehensive review of strategic alternatives to enhance shareholder value. During the last seven months, the Board, with the assistance of three independent financial advisors and legal counsel, examined a full range of options to generate shareholder value, including capital structure alternatives, potential acquisitions, portfolio optimization, a potential sale of the whole company, and continued operation as a standalone business. The Board oversaw

an extensive process that involved outreach to 25 potential buyers, including financial sponsors and strategic entities, and invited proposals for all or parts of the business. After consideration of the opportunities, risks and uncertainties facing the Company and the broader sector, as well as the alternatives available to the Company, the Board determined that the KKR proposal presented the best opportunity to maximize value for shareholders.

James D. Shelton, Envision's Lead Independent Director, commented, "After conducting a robust review of the business and competitive landscape, the Company's opportunities and challenges, and the strategic and financial alternatives available to the Company, the Board unanimously believes that this transaction will deliver the most value to Envision's shareholders."

Christopher A. Holden, Envision's President, Chief Executive Officer and Director, added, "Envision's leadership team – including both the Board and management – have been singularly focused on driving value for our shareholders and have taken decisive action in furtherance of that goal, including the implementation of a comprehensive operational improvement plan and a robust review of strategic alternatives. Today's announcement reflects the extensive efforts by our team to explore all opportunities to deliver value for our shareholders."

"Envision is a leading provider of physician-led services in a health care system in which physician-patient interactions have a pronounced impact on nearly all health care decisions. Envision has a very strong reputation for delivering high-quality, patient-focused care through its network of 25,000 clinical professionals at thousands of hospitals, surgery centers and alternate sites of care across the country," said Jim Momtazee, Head of KKR's Health Care investment team. "We are excited to partner with the outstanding team led by Chris Holden to help build upon the strong foundation in place and accelerate Envision's growth going forward."

The completion of the transaction, which is targeted for the fourth quarter of 2018, is subject to customary closing conditions and regulatory approvals. Envision intends to present the proposed transaction to its shareholders for approval at the Company's 2018 Annual Meeting, which will be scheduled as soon as practicable following the filing and review of proxy materials. The Company intends to hold its Annual Meeting no later than October 1, 2018. Upon the completion of the transaction, Envision will become a

> private company, and its common stock will no longer be traded on the New York Stock Exchange.
>
> KKR will be making the investment primarily from its KKR Americas Fund XII.
>
> J.P. Morgan Securities LLC, Evercore and Guggenheim Securities LLC are serving as financial advisors and Wachtell, Lipton, Rosen & Katz and Bass, Berry & Sims are serving as legal counsel to Envision. Simpson Thacher & Bartlett LLP is acting as legal counsel to KKR. Fully committed debt financing for the transaction will be provided by Citigroup Global Markets, Credit Suisse, Morgan Stanley, Barclays, Goldman Sachs, Jefferies, UBS Investment Bank, RBC Capital Markets, HSBC, Mizuho, and KKR Capital Markets.[2]

30.     The Merger Consideration the Company's shareholders stands to receive if the Proposed Transaction is consummated is unfair and inadequate because, among other things, the intrinsic value of the Envision is materially in excess of the amount offered given the Company's prospects for future growth and earnings.

31.     For example, on Envision announced its Fourth Quarter and Year End 2017 Financial Results.  During the Company's earnings call, Christopher Holden, the Company's Chief Executive Officer and President stated:

> Our fourth quarter results demonstrate our ability to align our cost to the volumes across our specialties, and we are driving additional operational efficiencies across the organization in 2018, ***with full realization into 2019***.
>
> Now 2017 was a challenging first year for new Envision following the merger. Utilization headwinds, natural disasters, executive leadership changes, and portfolio rationalization all added complexity to our launch. But despite these challenges, we made great progress towards our long-term vision. ***We remain bullish on our strategy***, and our team is engaged in expanding our market

---

[2]   Envision Healthcare Corp., Current Report (Form 8-K), at Exhibit 99.1 (Press Release dated June 11, 2018 of Envision Healthcare Corporation.) (June 11, 2018).

leadership. Positive results from new contract sales, managed care contracting efforts, acquisitions, and others in 2017 ***confirm our directional momentum headed into 2018***.[3]

32.     Kevin Eastridge, Envision's Chief Financial Officer, further highlighted the

Company's favorable performance and optimistic outlook:

> Overall, this was a solid quarter relative to the guidance we provided last quarter. Net patient revenues for the fourth quarter were $2 billion, which is within our guided range. Adjusted EBITDA was $211.4 million, ***above the top end of our guided range***. Adjusted net earnings was $71.9 million or $0.59 per diluted share, ***also above our guidance. For the fourth quarter, cash flow from operations was solid.***
>
> [***]
>
> Finally, in our press release last night, we also introduced 2018 guidance. We expect to generate revenue of $8.35 billion to $8.53 billion in 2018, ***a growth of roughly 7% to 9%***. Our assumptions include organic revenue growth of 2% to 5% for all of Envision, which consists of same-contract Physician Services revenue growth of 1% to 3%, net new contract revenue growth for Physician Services of 2% to 3%, and same-center Ambulatory Services revenue growth of 1% to 2%. Same-contract, same-center revenue growth consists of both rate and volume growth. We also expect to use our free cash flow to invest approximately $400 million in acquisitions throughout the year.[4]

33.     As seen above, Envision is poised for considerably growth.  However, if the

Proposed Transaction is consummated, Envision shareholders will be forced to accept a one-time

payment of cash and forsake any future interest in the Company.  As a result, it is imperative that

shareholders receive the material information (discussed in detail below) that Defendants have

omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate

---

[3]   *Envision Healthcare (EVHC) Q4 2017 Results - Earnings Call Transcript*, Seeking Alpha (Feb. 28, 2018), *available at* https://seekingalpha.com/article/4151775-envision-healthcare-evhc-q4-2017-results-earnings-call-transcript?part=single.

[4]   *Id.*

suffrage rights and make an informed decision concerning whether to vote in favor of the Proposed Transaction.

## II.    The Materially Incomplete and Misleading Proxy

34.    On July 9, 2018, Envision filed the Proxy with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

35.    First, with respect to the *Management Sensitivity Case* projections, the Proxy fails to disclose sufficient concerning the feedback that the Company received from shareholders and bidders regarding various risks and uncertainties that Envision management considered when deciding to prepare the *Management Sensitivity Case* projections.  *See* Proxy at 50.

36.    Numerous courts have championed the importance of management based financial projections because a company's management has unique insight into their firm's future that the market does not.  Shareholders cannot hope to replicate management's inside view of the Company's prospects.  The established case law shows the importance (and, hence, materiality) of financial projections to shareholders' decision-making.

37.    By electing to disclose some of Envision's projections, Defendants' obligated themselves to speak the whole truth regarding Envision's projections by providing complete and accurate projections because if a proxy discloses financial projections and valuation information,

such projections must be complete and accurate, rather than cherry-picking favorable financial metrics to disclose. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

38. Second, the Proxy describes each of the Financial Advisors' fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of the fairness opinions and their respective analyses fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Envision's shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on each of the Financial Advisors' fairness opinions in determining whether to vote their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Envision's common shareholders.

39. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in their analysis: (i) the range of Envision's terminal asset values at the end of the five-year period ending in 2022; (ii) the inputs and assumptions underlying the calculation of the perpetual growth rates range of 1.0% to 1.5%; and (iii) the inputs and assumptions underlying the calculation of the discount rate range of 8.0% to 9.0%. *See* Proxy at 55.

40. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in their analysis: (i) the range of Envision's terminal values under the *Management Case* and *Management Sensitivity Case* projections; (ii) the inputs and assumptions underlying the calculation of the perpetual growth rates range of 1.0% to 2.0%;

(iii) the inputs and assumptions underlying the calculation of the discount rate range of 8.0% to 9.0%; and (iv) Envision's net debt as of June 30, 2018. *See* Proxy at 62.

41.     With respect to Guggenheim's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in their analysis: (i) Envision's estimate/continuing value and the projected horizon; (ii) the inputs and assumptions underlying the calculation of the perpetual growth rates of 1.0% to 1.5%; and (iii) the inputs and assumptions underlying the calculation of the discount rate range of 8.0% to 9.0%. *See* Proxy at 71.

42.     These key inputs are material to Envision shareholders, and their omission renders the summary of J.P. Morgan, Evercore, and Gugenheim's discounted cash flow ("DCF") analyses incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a DCF analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars… This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion ***unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***.  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).   Without the above-mentioned information, Envision shareholders cannot evaluate for themselves the reliability of J.P. Morgan, Evercore, and Gugenheim's DCF analyses, make a meaningful determination of whether the implied per share equity value reference ranges reflect the true value of the Company or was the result of J.P. Morgan, Evercore, and Gugenheim's unreasonable judgment, and make an informed decision regarding whether to vote their shares in the Proposed Transaction.

43.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy fails to disclose the individual multiples J.P. Morgan calculated for each company utilized.  *See* Proxy at 53-54.  The omission of these multiples renders the summary of the analysis and the implied per share equity value reference ranges materially misleading.   A fair summary of a companies analysis requires the disclosure of the individual multiples for each company; merely providing the range that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied per share equity value reference ranges.   Accordingly, J.P. Morgan's *Public Trading Multiples* analysis is materially incomplete and misleading, and the individual multiples for each company observed must be disclosed so Envision shareholders can determine whether the implied per share equity value reference ranges set forth in the Proxy actually reflect the true value of their interest in the Company.

44.     Likewise, with respect to J.P. Morgan's *Selected Transactions Analysis*, the Proxy fails to disclose the individual multiples J.P. Morgan calculated for each transaction utilized.  For the same reasons mentioned above, the failure to disclose the individual multiples for each of the transactions that were considered renders the summary of the analysis and the implied per share equity value reference ranges materially misleading.

45.    The Proxy also fails to disclose or misstate material information relating that materially misleads shareholders as to the potential conflicts of interest faced by the Board and Evercore.

46.    Specifically, the Proxy states:

> During the two-year period prior to the date of its written opinion, Evercore and its affiliates have provided financial advisory services to Envision for which Evercore received fees, including the reimbursement of expenses, in an amount equal to approximately $5 million in the aggregate. During the two-year period prior to the date of its written opinion, Evercore and its affiliates have also provided financial services to KKR, an affiliate of Parent, and its affiliates and portfolio companies, for which Evercore received fees, including the reimbursement of expenses in an amount equal to approximately $32.5 million in the aggregate.

However, the Proxy fails to disclose sufficient information concerning Evercore's historical relationship with Envision and KKR, including the nature of their relationship and what services were performed.  Such information is material to Envision shareholders.

47.    The nature of Evercore's historical relationship and the specific work performed for Envision is required pursuant to Item 1015.  Such information is also material to Envision shareholders.  It is imperative for shareholders to understand what factors might influence a financial advisor's analytical efforts.  Indeed, an investment bank providing a fairness opinion for long-standing clients may be influenced to find a transaction fair to avoid irritating management and other corporate actors who stand to benefit from the transaction, as this will ensure future lucrative business.

48.    Likewise, Evercore's historical relationship and the specific work performed for KKR is equally material to Envision shareholders as a financial advisor's interest in a proposed merger must be carefully considered in assessing how much credence to give its analysis.  It is critical that shareholders understand the arrangements that such advisors are operating under in

order to determine whether there may be conflicts that call into question the independence of such

advisors and/or the adequacy of their fairness opinion as a whole

49.     Accordingly, the omission of specific details concerning Evercore's previous work

performed for Envision and KKR renders the Proxy materially incomplete and misleading.

50.     In sum, the omission of the above-referenced information renders the Proxy

materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure

of the foregoing material information prior to the expiration of the Proposed Transaction, Plaintiff

and the other members of the Class will be unable to make an informed decision regarding whether

to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm,

warranting the injunctive relief sought herein.

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and
Rule 14a-9 and 17 C.F.R . § 240.14a-9 Promulgated Thereunder)**

51.     Plaintiff incorporate each and every allegation set forth above as if fully set forth

herein.

52.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use

of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to

section 78l of this title."  15 U.S.C. § 78n(a)(1).

53.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that proxy communications shall not contain "any statement which, at the time and

in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

54.     The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

55.     Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR § 229.1015.

56.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Envision; (ii) the valuation analyses performed by the Financial Advisors in support of each of their fairness opinions; and (iii) the potential conflict of interest potential conflicts of interest Evercore faced as a result of its historical dealings with Envision and KKR.

57.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to common shareholders although they could have done so without extraordinary effort.

58.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Financial Advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the Financial Advisors, as well as their respective fairness opinions and the assumptions made and matters considered in connection therewith.   Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.   The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.   Indeed, the Individual Defendants were required to, separately, review the Financial Advisors' analyses in connection with their receipt of their fairness opinions, question Financial Advisors as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

59.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.   The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   The

Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

60.     Envision is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

61.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

62.     Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of Envision within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Envision, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

64.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

66.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

67.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

69.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

//

//

//

Dated: August 9, 2018

**COOCH AND TAYLOR, P.A.**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

*/s/ Blake A. Bennett*
Blake A. Bennett (#5133)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
Tel.: (302) 984-3800

*Attorneys for Plaintiff*